## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 27 2019, 9:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of M.R.S. (Minor Child); | February 27, 2019 |
| | Court of Appeals Case No. 18A-JT-2012 |
| T.L.S. (Mother), | |
| *Appellant-Respondent,* | Appeal from the Floyd Circuit Court |
| v. | The Honorable J. Terrence Cody, Judge |
| Indiana Department of Child Services, | Trial Court Cause No. 22C01-1712-JT-921 |
| *Appellee-Petitioner.* | |

**Najam, Judge.**

# Statement of the Case

T.L.S. ("Mother") appeals the trial court's termination of her parental rights over her minor child M.R.S. ("Child"). Mother[1] raises a single issue for our review, which we restate as follows:

1. Whether the trial court erred when it concluded that the conditions that resulted in Child's removal from Mother's care would not be remedied.

2. Whether termination of Mother's parental rights was in Child's best interests.

We affirm.

# Facts and Procedural History

Mother gave birth to Child in July 2011. In January 2015, the Indiana Department of Child Services ("DCS") received a report that Mother was abusing drugs. On April 23, 2015, DCS filed a petition alleging Child to be a Child in Need of Services ("CHINS"). After a hearing, the court adjudicated Child to be a CHINS, and on August 20, 2015, the juvenile court entered its dispositional order and instructed Mother to do the following:

1. Maintain suitable, safe, and stable housing;

2. Secure and maintain a legal and stable source of income;

---

[1] Father does not join this appeal.

3. Not use, consume, manufacture, trade, distribute or sell any illegal controlled substances;

4. Submit to random drug screenings;

5. Attend drug and alcohol classes to address substance abuse issues;

6. Enroll in programs recommended by the family case manager or other service providers within a reasonable period of time, not to exceed thirty days, and participate in the program without delay or missed appointments. If required to obtain an assessment, arrange to complete that assessment within thirty days.

[4] Mother did not comply with the court's order and, instead, continued to use drugs. The family case manager ("FCM"), Tia Muir, referred Mother to various services, including drug and rehabilitation services and home-based therapy. Mother sporadically participated in services, and DCS removed Child from Mother's care on September 14, 2015. DCS placed Child with foster parents, A.C. and L.C. The permanency plan initially in place was for reunification of Mother and Child.

[5] Thereafter, Mother continued repeatedly to fail services and use drugs. Mother tested positive for drugs on 62% of her drug screens. Due to Mother's noncompliance with the dispositional order, DCS moved to change the permanency plan for Child to adoption. Accordingly, on December 1, 2017, DCS filed a petition to terminate Mother's parental rights.

[6] On January 2, 2018, the trial court held a fact-finding termination hearing at which numerous witnesses testified, including both Mother and FCM Muir. In her testimony, Mother acknowledged that it is "[p]robably not" possible to properly raise a child while addicted to illegal drugs. Tr. Vol. 2 at 215. Mother

also admitted that there were illegal drugs inside the residence she shared with Child. *Id*. at 238.

[7] After that hearing, the trial court entered the following findings of fact and conclusions of law:

> There is a reasonable probability that the conditions that resulted in [C[hild's removal or the reasons for the placement outside the parent's home will not be remedied in that [Mother] has continued to test positive for illicit substances, particularly marijuana and cocaine, throughout the life of the CHINS case and has not completed services to address her substance abuse issues.
>
> Termination is in [C]hild's best interests . . . in that: [Mother has not] completed services to address the reasons for DCS involvement and removal of [C]hild, making reunification impossible. Therefore, [C]hild can only be provided a safe, stable home free from abuse and neglect by [terminating] parental rights and placing him for adoption.

Appellant's App. Vol. 2 at 53-54. In light of its findings and conclusions, the court ordered the termination of Mother's parental rights. This appeal ensued.

## Discussion and Decision

### *Overview*

[8] We begin our review of this appeal by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Fam. & Child. (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans.*

*denied*.  However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination.  *Schultz v. Porter Cty. Off. of Fam. & Child. (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001).  Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened.  *Id.*  Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities.  *Id.* at 836.

Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove:

> (B) that one (1) of the following is true:
>
> (i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> * * *
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2018). DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[10] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Off. of Fam. & Child. (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Off. of Fam. & Child. (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[11] Here, in terminating Mother's parental rights, the trial court entered findings of fact and conclusions thereon following an evidentiary hearing. When a trial court's judgment is based on such findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Off. of Fam. & Child.*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[12] On appeal, Mother contends that the trial court erred when it concluded: that the conditions that resulted in Child's removal will not be remedied; that the continuation of the parent-child relationship poses a threat to Child's well-being; and that termination is in Child's best interests. However, as Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, we need only consider the following two issues: whether the conditions that resulted in Child's removal will not be remedied and whether termination of Mother's parental rights is in Child's best interests.

### *Issue One: Failure to Remedy*

[13] We first address the trial court's conclusion that there is a reasonable probability that the conditions that resulted in Child's removal or the reasons for placement outside Mother's home will not be remedied. In determining whether the conditions that led to a child's placement outside the home will not be remedied, a juvenile court is required to (1) ascertain what conditions led to the child's removal or placement and retention outside the home; and (2) determine whether there is a reasonable probability that those conditions will not be remedied. *R.C. v. Ind. Dep't of Child Servs. (In re K.T.K.)*, 989 N.E.2d 1225, 1231 (Ind. 2013). As for the first step, here the trial court found that DCS had removed Child from Mother's home and placed him in foster care in part due to Mother's severe substance abuse issues, which prevented her from providing the care and supervision that Child required.

[14] In order to determine whether there is a reasonable probability that the conditions that resulted in removal will not be remedied, the trial court should

assess a parent's "fitness" at the time of the termination hearing, taking into consideration any evidence of changed conditions. *E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636, 643 (Ind. 2014). The court must weigh any improvements the parent has made since removal against the parent's "habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation." *Id*. When making such decisions, trial courts should consider evidence of a "parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, lack of adequate housing, and employment." *Evans v. St. Joseph Cty. Off. of Fam. & Child. (In re A.L.H.)*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002).

[15]    The trial court found that, over the course of two years after Child's removal: Mother did not participate in the majority of services offered to her; she continued to test positive for drugs—indeed, she tested positive for cocaine one week before the final fact-finding hearing; and there is a reasonable probability that Mother's substance abuse would continue. Additionally, Mother admitted during the fact-finding hearing on the petition to terminate her rights that it was "[p]robably not" possible for her to properly raise Child with her addictions. Tr. Vol. 2 at 215. She further admitted that she had kept illegal substances inside the residence where she and Child had lived. *Id.* at 238. Accordingly, we cannot say that the trial court erred when it concluded that there is a reasonable probability that Mother's drug use would continue and would interfere with her ability to adequately care for Child.

### Issue Two:  Child's Best Interests

[16]  Mother also asserts that the trial court clearly erred when it concluded that termination of her parental rights is in Child's best interests.  In determining what is in a child's best interests, a juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence.  *A.S. v. Ind. Dep't of Child Servs. (In re A.K.)*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010).  A parent's historical inability to provide "adequate housing, stability, and supervision," in addition to the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child.  *Id*.

[17]  Regarding Child's best interests, the trial court found:  that Child had been in foster care for over two years; that Child was bonded with his foster family; and that prolonging Child's permanency plan would be detrimental to Child.  Additionally, both Child's court appointed special advocate ("CASA") and FCM Muir testified that termination would be in the best interests of Child.

[18]  Nevertheless, Mother asserts on appeal that the trial court's judgment is clearly erroneous because there is no evidence that Mother neglected Child and that her rights should not be terminated "for the sole reason that she is an addict."  Appellant's Br. at 17.  We do not terminate these rights to punish a parent, but to protect a child.  *Lang v. Starke Cty. Off. of Fam. & Child.*, 861 N.E.2d 366, 371 (Ind. Ct. App. 2007), *trans. denied*.  When making its decision, the court must subordinate the interests of the parents to those of the child.  *See Stewart v. Ind. Dep't of Child Servs. (In re J.S.)*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).  "The court need not wait until a child is irreversibly harmed before terminating the

parent-child relationship." *Id.* Moreover, this Court has previously held that recommendations of the family case manager and court-appointed advocate to terminate parental rights, coupled with evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.* The trial court's judgment is supported by the evidence, and Mother's argument is merely a request for the Court to reweigh the evidence on appeal, which we cannot do.[2]

In sum, we affirm the trial court's termination of Mother's parental rights over Child.

Affirmed.

Pyle, J., and Altice, J., concur.

---

[2] As we conclude that the trial court's findings are supported by the record and that those findings support the trial court's judgment, we need not consider Mother's additional argument that the trial court's findings are "too general" to support the termination of her parental rights. Appellant's Br. at 15.